, Inc. v. OGD Equipment Company, Inc. v. OGD Equipment Company, Inc. v. OGD Equipment Company, Inc. Our second case of the day is D.H. Pace Company, Inc. v. OGD Equipment Company, LLC, 22-10985. Let me ask a question of both sides before we get started. We have sealed briefs in this case. I just want to make sure nobody is suggesting in any way that we need to seal this courtroom or that as we draft our opinion that there needs to be special care taken, correct? For Pace, that's correct. Thank you. All right. For the appellant, we have Mr. Charns. You have saved four minutes for rebuttal. You may proceed. Good morning. It may have pleased the Court. My name is Adam Charnas, and I represent the appellant, Pace, in this case. This case concerns a trademark licensee's ability to protect itself from unfair competition and to protect the public from commercial deception. The district court found over 170 examples of confusion caused by OGD's intentionally misleading conduct, and it found significant damage to Pace's reputation and commercial interests. But despite these findings, the findings of harm to Pace and harm to the public, and despite its recognition that Congress gave Pace a cause of action, Section 43 of the Lanham Act, the district court held that Pace was powerless to sue to remedy the violation and protect the public. And that holding rests on two fundamental errors that I'll address. The first fundamental error is the district court's conclusion that the license agreement barred Pace's claims. But it's undisputed that the license agreement did not prohibit Pace or interfere with its ability to sue. So nothing in the license agreement stripped Pace of the right to exercise its claim under Section 43 that Congress provided to it. And second, the district court concluded that a settlement agreement barred Pace's claims. But it is also undisputed that the settlement agreement specifically preserved Pace's right to sue and excluded Pace from its scope. And the district court's attempts to bypass the language of both of these agreements and, in the process, to distort the meaning of the Lanham Act all fail. And for that reason, this Court should reverse. So I want to start with something that's undisputed. And it is undisputed that Pace, and found by the district court, that Pace has standing here under Lexmark. And in the words of Lexmark, that means, and the district court found, and on appeal, they haven't disputed, that Pace has commercial interests, its own commercial interests, and its reputation, and its sales, and that it presented evidence of summary judgment of injury directly flowing from the unfair competition by OGD. And that means we have a cause, Pace has a cause of action under Section 43. Now, OGD's argument is, well, but you're just a non-exclusive licensee, and therefore, you can't sue under Section 43. Well, and that brings me to my question, Mr. Charns. Okay. So you have a, your argument certainly is that you have a broad right under the Lanham Act. And then we have our case law that has examined the licensing agreement. And your position is, well, the licensing agreement is relevant to this analysis if it in any way cuts back on the broad rights afforded under the Lanham Act. So are you suggesting that the licensing agreement, unless it specifically cuts back, is of no relevance to our inquiry whatsoever? You know, you are a non-exclusive licensee. The licensing agreement says nothing, as you concede, about the trademark enforcement or infringement whatsoever. So we just don't pay attention to the licensing agreement unless it cuts back on the Lanham Act? What do we do with the licensing agreement? I think that's exactly right. Congress in Section 43 didn't say any person except a licensee. It said any person. And if you look at the structure of the Lanham Act, it's clear that Congress meant that. Section 30 — there are really two causes of action in the Lanham Act. There's Section 32 and there's Section 43. 43a is what we're dealing with here. Section 32 is limited to registrants. It says any registrant. Section 43 is broader. It says any person. Any person can sue. So then the question is, well, did the licensee voluntarily agree in the license agreement not to exercise the right that Congress has given it? That was the case. Suppose it did, though. Wouldn't the answer be that if it later sues on that, that it's just breached its licensing agreement and not that it doesn't have a statutory cause of action? It seems like you're saying they can — they can overcome what Congress has done by — through the licensing agreement. Well, I think, Your Honor, what Croma says is if the licensee agreed in the licensing agreement not to — not to exercise the right under Section 43, then it does not have that right. It's — when this Court went further than saying that was just a breach of the licensing agreement itself. Now, what OGD does is they — they point to cases in a whole bunch of areas where they say, well, that shows that license — non-exclusive licensees can't sue. The problem is that none of their cases, with one exception I'll talk about — all of their cases with one exception are outside of the Section 43 context. They cite cases from Section 32 of the Lanham Act. They cite patent cases, and they cite copyright cases. And all three of those statutory contexts are different. Section 32 limits suits by registrants. The Patent Act limits suits to owners. The Copyright Act is the same. All — none of those cases are relevant at all. The question about the non-exclusive license thing, I mean, certainly there's a lot of cases saying that that's not an obstacle. They point out, well, then that would mean all the non-exclusive licensees could sue one another. But walk me through what would happen if, instead of the settlement agreement that we had, we had a blanket license agreement where the licensor said to OGD, you can use our marks however you'd like, and say they'd done that years ago. What would that do to your claim? Just walk me how that — walk me through how that would — that would unfold. If OGD also had a license to the — well, then we — then we could not — as a practical matter, we could not sue because they would — their competition using the mark would not be unfair because they had — I'm not sure about that. I'm not sure about that. So — so unfair competition under 43 of the Lanham Act covers false advertising, right? It covers bait and switch. It covers substitution of one brand for another. Use of confidential information, theft of trade secrets, breach of restricted covenant, trade libel, false representation of products and services, right? Even if you both had a license, they still couldn't steal your trade secrets, right? It depends on — it's very fact-specific. You're absolutely right. But do you — sure. The bare use of the mark by itself, I think, probably would not be actionable in that circumstance. Of course, that's not the case here at all. I mean, the — I mean, normal trademark cases, as Your Honors may know from — from past cases, have either no examples of actual confusion by consumers or a small handful. I mean, this Court has said that half a dozen is enough to establish confusion as a matter of law. Here we have scores and scores and scores of examples of actual confusion alleged in the complaint and in the record. So their argument essentially is that we are a case that's powerless to — to prevent the consumer confusion that they are intentionally sowing and that they are benefiting from and that is harming us. And that's just not what Congress said in Section 43. As — as Judge Rauscher just said, Section 43 is an incredibly broad on Federal unfair competition statute. And there's nothing to suggest that un — that licensees can't sue. In fact, the courts applying Section 43 have said that they can. Cases like — from the — like the — the cases from the — from the First Circuit, like the Quabar — Quabog, if that's how you pronounce the case, and the Shell case, and there are other district court cases that say expressly that a non-exclusive licensee can sue under Section 43. So the only thing they really have, they say, sort of two things, two related things. They say Kroma cut back on that, this court in Kroma. But that's not the holding of Kroma. The holding of Kroma, as — as we talked about, was if the license agreement prohibits you from suing, you can't sue. That's the facts of Kroma. That's the holding of Kroma. And they say, well, our — the licensees, the non-exclusive licensees' rights are derivative of the — of the licensor's rights. And if the licensor is not involved in the case or if the licensor released its claims against the defendant, that — that extinguishes the licensee's claims. And that — Rosenkranz. I have a question about that. There's a lot of discussion about the settlement agreements saying this doesn't bind anyone else, query whether it could have.  differently or had different language in it, that the licensor and — and OGD could have extinguished your client's rights in this case. Well, I — I think the answer is — is a practical matter without our involvement. Because your point is we have — we're a non-exclusive licensee. We're harmed. We can do this. And then there's all this discussion about the language of the agreement. I'm trying to envision an agreement that would square with your position where they would extinguish your rights. I think the answer is no. If we're not a party and, you know, if — if it doesn't involve us, for example, the settlement agreement, they could have — ODC could have, for example, said, well, we're going to amend the license to prohibit — of course, that would require our participation. But — but without anything like that, the answer — the answer is no. We have separate rights. Congress gave us separate rights under Section 43 to sue. We have a separate — we have a separate reputation from ODC. We have separate commercial interests. We've got separate longstanding business interests that they're intentionally interfering with by lying to customers and the public about who they are, and then providing substandard service to those customers. That harms our reputation. It harms our — our profits. It hurts our customer relationships going forward. And that's exactly what Congress said is actionable under Section 43. And nothing in this settlement agreement did or could take that — that away from us. I'll ask you a question about CROMA. So, you know, CROMA is, I think, distinguishable from this case in certain respects. It's actually about an exclusive licensee, for one thing. But it does specifically say Section 43. You know, that's what it's directed at. So — so is it even possible for us to go down the line that I sort of went down with you earlier to say, look, unfair competition is much broader than trademark infringement? Are we bound by CROMA to just say, well, Section 43, this is the — this is the rule for Section 43? Well, CROMA is a Section 43 case. There's no question about that. And I think the holding of CROMA, that is, if the license agreement bars the licensee from suing, the licensee cannot sue, I think that holding applies to Section 43. Of course, that's not our license agreement here, and that holding doesn't — doesn't bar us here. Yeah. But I just — I guess some of your arguments seem to suggest that that's wrong, right? Well, that's not — that's not our case. I'm not — you know, I'm not — I'm not — I haven't analyzed, haven't thought about, not here arguing that the holding of CROMA is right or not because it doesn't apply to us. So we have — I have no quarrel with CROMA because it doesn't apply to us. Well, what about your argument that, you know, Congress said any person in 43? I mean, CROMA seems to reject that because it says, well, not any person, not if the license says you need to notify the licensor instead of suing on your own behalf. I mean, doesn't CROMA kind of just get rid of that argument? Well, again, you're asking me to defend an aspect of CROMA that I'm not challenging, but what I'll say is the way — the way I consider — Well, I guess what I'm saying, I just — it seems like CROMA rejects the proposition that you're suggesting we should accept, which is that there's a difference between any person in 43 and some of these other provisions. No. I don't — I don't think that's right because the way I conceive of CROMA is if a person — Congress, you could have a right under — under statute or a right under the Constitution to do something. I have a right to speak, but I could contractually promise to somebody not to speak even though I have that right. That doesn't mean that there's not a right under the First Amendment. And I think that's the same thing here. The licensee has the right to sue under Section 43, but it can contract not to do so with the licensor if it — if their commercial arrangement, you know, establishes that. And the reason — and it's important to look at CROMA — there's a reason why in CROMA the licensee agreed not to sue, because the licensor was under a contractual obligation to protect the trademark, to litigate for the trademark, and then to compensate the licensee for any breaches. So it was a whole — it was a whole package in which they said, yes, we're not going to sue. We, the licensee, are not going to sue — agree not to sue, but that's your obligation. You're going to do it diligently, and you're going to compensate us. And our license agreement doesn't say anything about that. Thank you, Mr. Charns. Thank you. You have four minutes for rebuttal. Mr. Waddell, you may proceed. May it please the Court. Good morning, Your Honors. Brandon Waddell on behalf of Defendant Appley, OGD Equipment Company. I'd like to start with the language of the statute, because I think there's a fundamental misunderstanding here. When Mr. Charns says that any person is given a right under Section 43A, quoting the statute, he's actually misunderstanding the any person that that language refers to. Section 43A says any person who does a number of things shall be liable in a civil action. The any person refers to a defendant. It does not refer to a plaintiff. It does not refer to the party bringing the claim. And I think that matters, because what this Court told us in Croma is that whether a party's rights fall within the zone of interest of the Lanham Act necessarily requires us first to determine what the right is. And Croma told us that, quote, a party's rights under the Lanham Act rely upon the license agreement. So — Well, the any person is in there twice. I mean, it says shall be liable in a civil action by any person who believes he was — he or she was damaged or something like that. Certainly, that's correct, Your Honor. But it also tells us that any person — essentially, what it says is that any person who has a — and I would like to point the Court specifically to Section A1A, which Justice Scalia in Lexmark told us sets out a claim for a false association. So what are the elements of a claim for a false association? The elements of a claim for a false association, this Court has made very clear, require that the plaintiff demonstrate that it has, quote, unquote, enforceable rights in the trademark. What Croma tells us is that where you look to determine whether a party has enforceable rights in a trademark is the source of those rights, the contract itself. And specifically, does that license agreement give the licensee sufficient rights in that name to sue? Now, we could stand here all day long and talk about the language that I believe is controlling in Croma about give and grant and the language that my friend on the other side says is controlling about limits and prohibitions. But ultimately, your position is if the license agreement does not explicitly say we convey a right to sue, then the licensee has no right to sue. That's your ultimate position, correct? No, Your Honor. That's not my ultimate position. And I actually don't think that's a question that's presented before this Court. I mean, on the first part of your argument. I actually don't think that's even on the first part of your argument. What is your position, then, on that? Because that's the way I understood your argument, too. So our argument, and let's take the distinction, Judge Branch, that you mentioned between exclusive and non-exclusive licensees. In Croma, the licensee was a non-exclusive or it was an exclusive licensee. There is no dispute that that licensee has more rights than the licensee here, which is non-exclusive license. And as we pointed out in our briefing, the term non-exclusive licensee has an established legal meaning. This is a quote from the Second Circuit. It means that the licensee is granted a bare right to use the trademark without any right to exclude others at all. That's the Hugo Boss case. Now, where you have an exclusive license, it makes sense to look to whether there was something withheld, because by definition, and this is the Hockerman case that this court quoted in the Croma decision, by definition, an exclusive license conveys, quote, all substantial rights. So it does make sense where there is an exclusive license to look to whether, in the conveyance of all substantial rights and a trademark, there was something that was withheld. But aren't you asking Croma to do an awful lot of work when we have a statute that is very broad with the power that it gives anybody, any person who believes that he or she is likely to be damaged by such act in 1125A1? So you're asking that we accept Croma that had a licensing agreement provision that specifically said these rights are not going to flow to the licensee, and we're now going to import that into all circumstances, even when there's a licensing agreement that is silent as to the rights of the exclusive or non-exclusive licensee as far as suing to enforce the mark? Well, so I would first point out that there was nothing in the license in Croma that said that the right to exclude was withheld. All that there was in Croma... But they interpreted it, they interpreted that to be the intent of the parties. I mean, that's the same thing, isn't it? They basically said the contract, they agreed there would be no right, no such right conveyed by virtue of all the different provisions in the agreement. That is correct, Your Honor. But I would argue that all of the provisions that this Court relied on, the integral provisions, as the Quote described them in Croma, are present here as well. So first, that there is no dispute that the licensor in this case held all the rights. So that's the first integral provision that Croma cited as resulting in its holding. And the second... Can I ask a fundamental question, though, before you go through that? Sure. And that is, is it your position that a non-exclusive licensee never has any rights under Section 43A? My position... Or has no ability to sue under 43A? Well, I should draw a line between Section 43A1A and 43A1B, because 43A1A necessarily requires, as this Court has made very clear, and there's honestly every circuit in this in the country holds, first you have to demonstrate an enforceable right in the trademark. And your position is you don't have an enforceable right if you're a non-exclusive licensee? Not necessarily. I believe there could be circumstances under which a non-exclusive licensee could have rights. Specifically, and I think the cases this Court cited in Croma are perfect examples. The Acido case, for example, indicated that a non-exclusive licensee could have a right to pursue a claim, but it needed to join the license order. But those were just cited in Croma for the point that you look at the agreement, and everyone agrees that you look at the agreement, I thought, from the briefs. But if your point is they're a non-exclusive licensee, so game, set, match, then it really wouldn't matter what the agreement said beyond this is a non-exclusive license, right? Well, it could be true, Your Honor, that the term, what the parties tell you is all you need to look at, that this is a non-exclusive license. But there's also, let's look at the Quabag case that my friend on the other side mentioned. But that's not dispositive. The non-exclusive nature is not dispositive? Your Honor, I believe that the non-exclusive nature would require that the licensor be joined in the case in order for the licensee to pursue the claim. But you don't need to go that far in order to decide this case. Quabag tells us in that case a non-exclusive licensee was permitted to pursue a claim, but only because its license explicitly gave it those rights. Now, that's not this case. So I don't think you need to decide whether an explicit grant of rights would be sufficient for a non-exclusive licensee to pursue a Section 43a claim. But I do think you can look at classic concepts of property law and classic concepts of contract law and understand the distinction between a non-exclusive licensee, like we have in this case an exclusive licensee, where all rights are granted, all substantial rights. It makes sense to look to the contract to determine whether there was anything withheld. Where there is, as there is conceded here, substantially fewer than all rights granted, there's a very, very limited, restricted right to use. Then we should ask the parties, did you say anything about other rights? If you did not grant the entire bundle of sticks, we don't need to ask whether something was withheld. We look at the plain text of the contract and see whether something was granted. And I think that that distinction explains virtually all of the cases that the parties have cited. In almost all of the cases, at least where this issue was raised, so it was presented for the court for the decision, actually, in all of the cases where this issue was raised and presented to the court for decision, either the non-exclusive licensee was obligated to bring in its licensor, the Escamilla case from the Fifth Circuit itself involved, which my friend points to a number of times in his brief, also involved the presence of the licensor in the case. That's what made the Section 43A claim all right for a licensee. Can I ask you a question just so I understand your position? Sure. So you have been very careful to say 43A1A and not 43A1B. What's the difference between, why are you drawing that line? What's the difference? So the reason I'm drawing that line is because Justice Scalia told us in Lexmark to draw that line. Okay. Justice Scalia told us in Lexmark there are two distinct causes of actions that arise under Section 43A1. There is a false association claim and a false designation or, excuse me, a false advertising claim. Now, a false association claim, again, I'm going to point this Court to its decision in Custom Manufacturing and Engineering, Inc. v. Midway Services, explains that the first element a plaintiff must prove in a false association claim obligates the plaintiff to show that the plaintiff had enforceable trademark rights in the mark. That's what led this Court to raise the question in Croma about, well, where do those rights come from? They come from the contract. Therefore, we need to look to the contract to see whether that contract grants this right to enforce. Not just a right to use, but a right to enforce. A false advertising claim, which has never been the way this case is litigated, which is one of the reasons why the parties spent this extensive amount of briefing space discussing the invited error doctrine and waiver and the way that Pace has positioned this case throughout, does not necessarily involve an enforceable right. To a mark. There are specifically Section 43A1B describes false statements and advertising that relate to the nature, characteristics, and geographic origin of the product. And Justice Scalia told us that those are two distinct causes of action. And I would also point out the Third Circuit recently, and this is a case that we did not cite in our brief, explained that it is vital to keep those causes of action distinct and that a plaintiff cannot attempt to shoehorn what is a claim about creating a false connection between two business entities into a false advertising claim. And that's the Parks LLC v. Tyson Foods case, 863 F. 3rd 220. So the reason why I'm drawing that distinction is because, as Justice Scalia explained to us in Lexmark, this question about whether a party has a right to sue is not really a standing question at all. It's a question about the elements of the claim. That case involved a false advertising claim, not a false association claim like is at issue here. It also didn't involve a license. So it's not particularly instructive about whether a plaintiff who is a licensee has a right to pursue a Section 43A claim. It doesn't really say anything to that. I guess, so why would, and I mean, I don't mean to derail your argument with this point, but I'm just trying to figure out, why would the licensing agreement between the plaintiff and the licensor matter for A1A but not matter for A1B? Why would it matter for A1A? Because that's the elements of the claim. The elements of that claim, and if you look at the text of 43A1A. Yeah, it's likely to cause confusion or cause mistake or deceive as to the affiliation, connection, or association of such person with another person or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person. So it matters for that but not misrepresents the nature, characteristics, qualities, or geographical origin of his or another person's goods. That's right, Your Honor. And it's specifically the language about affiliation, connection, or association, or origin, sponsorship, or approval. Because, and this case actually presents a perfect example of this. States describe the products that these parties sell as overhead doors. All of the instances of confusion that my friend pointed at, I would argue, are not intentional because virtually all of them, and by virtually all, I mean in excess of 95% of them, are instances where customers typed in the word overhead door into a search engine and received back a result that said my client provides overhead door repair services. Now, the reason why courts have interpreted the language affiliation, connection, or association, origin, sponsorship, and approval as this Court has done to require enforceable rights to a trademark is because otherwise this statutory provision goes completely off the rails. Justice Scalia told us that it does not go as broad, no portion of the statute goes as broad as it theoretically could. Right. But I guess what I'm, what you've cited our custom engineering case, and you say in a false association case you have to show enforceable trademark rights in a mark. We have a very broad statute, as you would concede, that shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act. We have a situation here where this is not just some random person in the world. This is actually a licensee, non-exclusive licensee. Yes, but a licensee. How is that not enough, the mere fact of having a license agreement that is silent on the issue of whether it can enforce the rights or not? Why is that under our custom engineering case not enough? Your Honor, I would point to the distinction between a non-exclusive and exclusive licensee, because what Croma tells us is that those rights under the Lanham Act derive from the licensing agreement itself. And I would like to make that point if I may with the remaining time that I have. And the reason why, I should also point out, that's consistent with decades of case law from multiple courts. The Fifth Circuit's decision in ICEE or the ICEE case, it's consistent with Casa Dimitri, which we cited in our brief. It's also consistent with the district court's decision, Judge Byron's decision in Croma itself, in which he said a licensee's trademark rights derive from the contract. So why, then, if the rights derive from the contract, would we need to look to the to whether the right was expressly granted? First principles of property and contract law, where it is not clear that all rights were granted, which was the case in Croma, but some smaller subset of those rights were granted, then we need to look to whether what courts have called the most important right, the right to exclude, was among those. And where a contract, a non-exclusive license, is silent, then the court should not read that into the contract where the parties did not expressly include it. I'd also like to point out, this Court doesn't need to really reach this point, because if the Court agrees that the rights of a licensee derived from the contract, which I think is plain on the face of Croma, and also plain as just a matter of common rights that it was granted in the contract. Can I ask one more question? Can I ask you to address this hypothetical for me? So I just want to figure out how this would work. So let's say you've got someone with a non-exclusive license to sell, I don't know, Sony products or something like that, right? Some big chain, it's a non-exclusive license. There are other people that can sell Sony products. And a competitor puts on their Sony products the other person's name, right? So you've got Company A sells Sony products, Company B sells Sony products. Company B takes Company A's name and just puts those on, just sticks those on their products and sells them like that. What is, what is the lawsuit that could be filed over that? So if I'm understanding the hypothetical correctly, I want to make sure that I am. If Company A, so in this case Pace, if we were to have utilized the name Pace, I think that this would be a very different case. I mean, I mean, not, you're not using, you're, so your response then would be that you have to sue over the sort of the copyright to the name of the thing that they own and not over sort of the intellectual property that they have licensed. That, that's what you're saying in that response? Well, I'm, perhaps I'm misunderstanding your hypothetical. My understanding is you were saying if we utilize Company A's name. And so in this case, Company A's name is Pace. Right. It's not Overhead Door Corporation or Overhead Door Company of Atlanta. Overhead Door Company of Atlanta is a right that was granted to Pace, but it remains the property of the licensor. And what I would say in assuming that... Okay. Well, I guess you're just, okay. Maybe I need to make a different hypothetical then, because you're just saying it doesn't matter. I think your response is a perfectly valid response. Your response is that doesn't really matter because they would be suing over their own name and not the one that they got from the licensor. Okay. So let's assume that there's someone that has a license to sell Sony products, non-exclusive. There's another person that does not have a license to sell Sony products, but they sell Sony products in any way. And they put a sticker on there that says approved by Sony. Exclusive licensor of Sony, right? They just lie about like the sticker that they put on their thing. What then? Well, so I think there would be a claim there by Sony, of course. Okay. There would also be a claim by the licensee in that case if it brought Sony into the case. Because the owner of those rights has a property interest in the thing that's at issue. And so it needs to be in the case for full relief to be granted. It also needs to be in the case for its rights to be protected. Because, and I think this case is a perfect example. You know, if Sony is a terrible example because it's obviously the type of name that nobody's going to confuse for anything else other than a Sony product. But overhead door is a very different type of name. And we have a claim in this case that the term overhead door is generic. Yeah. But why would, I guess, doesn't that just go to the merits? Doesn't that just, I mean, why does that? So, you know, I used a very protected mark, I guess, for my example. You're saying, well, in this case, we could, we argue that the mark isn't very well protected. It's generic. Maybe it shouldn't even be trademarked at all. Why does that tell us whether they can sue? So it's a Rule 19 problem at base. And the reason is because, and Rule 19 sort of has two prongs, two protective aspects of it. One is that, and that's, and honestly, that's the reason why Escamilla, that's the reason why Aceto obligated the licensee to bring in the licensor under Rule 19. Otherwise, account claims would be dismissed. And the reason why is twofold. One is that if we were to obtain a judgment in this case stating that overhead door is generic, that would affect overhead door's rights. So therefore, overhead door should have, should be obligated, in fact, to be a party to this case. Second. By that judgment? I mean, you said that in your brief, but they wouldn't be bound by that judgment. No. No, they wouldn't be bounded by that judgment. But actually, Rule 19 says it's a practical matter. It's not necessarily as a legal matter would they be bound by the judgment. Now, I think there's a question about whether they would be bound by that judgment. But you don't even need to get there because we have numerous cases telling us that as a practical matter, its interest may be affected. There's a second reason why Rule 19 is implicated here and why so many courts, basically every court to ever have ever considered this issue with the exception of one, which is the Qualback decision, which gave the right, gave an express right to sue. Every court to have ever considered this issue has held that the license door has to be in the case. And the second reason why is the practical aspects that we, that, Judge Brasher, you were talking about earlier. Pace has 450 licensees. How could a company who utilizes a term like overhead door, which is a descriptive at best term for a product, ever operate in an economy where it is subject to 450 lawsuits? And, of course, Pace, the license door, could eliminate those licenses tomorrow and grant 450 new ones. There are licenses where, non-exclusive licensees, where there are thousands of licensees. Sotomayor, let me, let me ask you one where I know you're getting over time, but my question is, you keep saying every case requires the license door to, to be in it. I would point out that not only are a lot of the cases that you're citing and also that the district court has cited are, are not related to Section 43 of the Lanham Act. They are dealing with different statutes where the rights granted by the statute are not as broad as what we're dealing with here. Once you start weeding out other statutory cases, what are we left with? So, again, I'll point to Aceto and Escondido. There's a reason why I keep hitting those, because both of those are 43A cases. And both of those said that the license door has to be joined because otherwise the, the, the party who's being sued, the party in my, in my client's position is subject to potentially conflicting judgments, subject to double judgments. And, and, and there needs to be some mechanism by which a party seeking peace can go to the owner of the right and seek some sort of understanding of how the parties will use, will structure their business relationships, which, by the way, is exactly what happened here. We went to the owner of the rights. Can I ask about the Rule 19 issue? So just, how, how does, how has that been brought up in the case? Was there a motion to dismiss filed based on failure to join an indispensable party? Is, is the franchisor not subject to personal jurisdiction in Georgia? What's the, what's the deal with that? So we, we raised it in our answer. So it's been in the case since the very beginning. This court's case law says that the court should have raised it on its own accord. It didn't. We, we, we briefed this in our motion for summary judgment. It's in the papers that were before the court. Right. This was not a basis for the district court's decision. It was not a basis for the district court's decision. All I'm doing is, is saying that it helps explain some of the distinctions. You know, citing the HACO med case, citing the ACETO case, as my, as my, my friends on the other side do, those are distinctive cases because of that issue. I understand you. Thank you. I thought ACETO dealt with a different statute, but I'll, I'll take another look at that. But I did have a question about some of the issues we've not really talked about. I understand your arguments about invited error and waiver and all those things. I wonder if you could put those to the side for a moment and just address on the merits why the summary judgment order would not have been incorrect to the extent there's claims that were pleaded about unfair competition generally about people answering the phone and saying, yes, we're the same company. We just changed computer systems or putting the stickers over the other stickers or basically lying to consumers. Those aren't addressed in the summary judgment order. And I understand you're saying that's because they didn't pursue them. But on the merits, why would summary judgment have been appropriate as to those claims? Well, because I think both parties have agreed that the same standards would apply. And so those, those claims aren't distinct in the sense that whatever this Court held or whatever the district court held, the parties agreed, whatever the district court held with respect to the Section 43A Lanham Act claim would also govern the State law claims. I might also point out that, that I think there's, I don't, I would disagree with the evidence that there's, that there's proof of lying to customers or that there's proof that there was some sort of nefarious sticker practices. And specifically, I would note that there are all of three instances of this sticker practice. All of those instances are, and you can look at them because they're in Pace's brief in this Court, are ones where my client put a work order after having repaired a garage door so that the client, the customer would know who it was that provided the last service. And I should also point out that, and this is in the summary judgment evidence, that Pace does the same thing. So, but setting those issues aside about whether those would ultimately be provable claims, the parties have agreed consistently throughout this case. The only reference to the State law claims in Pace's briefing was to say that they came out the same way. Well, I actually now have another question. I have pulled up my notes on ACETO. ACETO is Section 32 of the Lanham Act. So I'm happy to point, Your Honor, to the very last section of ACETO, which says, having held that we, and if you give me just a moment, I'll find the exact quote. But the first part of ACETO is certainly about a Section 32A claim. There is also a Section 43A claim, and ACETO dismissed that claim as well. And it said for the same reasons that the plaintiff does not have standing in the Section 32 context. I'll go back and look at that. All right. Thank you. Thank you, Your Honor. Mr. Charms, you have four minutes for rebuttal. Thank you, Your Honor. Virtually every case that my friend cited up here is not a Section 43 case. It's a Section 32 case or a patent case. He cited, for example, the IC case from the Fifth Circuit. That's a Section 32 case. He cited Fodor, which is a copyright case. And that's the problem with it. That's the fundamental error the district court made, and it's the fundamental problem with their brief. I do want to start with ACETO because it's — first of all, this is a district court opinion, and it's a very — I think the district court, just to be blunt, was a little bit confused here. The Court starts by saying this is a claim under Section 1125, which is Section 43. The judge then goes on and says the pertinent provision of the Lanham Act is Section 32. And then the Court then discusses page after page of Section 32 cases. And then at the end of the opinion says, for the reasons we discussed earlier, there's no Section 43 claim. So I think this Court — this district court, I think, committed the same oversight that the district court below did, which is mixing and matching Section 32 cases to Section — in the Section 43 context. Counsel emphasized that we need enforceable rights in the trademark to sue. We do have enforceable rights. We have the right to use. Section 43, all we need, all Pace needs, is the right to use the mark to sue under Section 43. There's two different things here. There's the right to use the mark, and there's the right to sue. The right to use the mark is provided in the license agreement. There's no dispute about that. The right to sue is provided by the United States Congress in Section 43. So the only question under Croma is, did we agree in the license agreement not to exercise the right Congress gave us? There's no argument that we did. There's no argument that the license agreement took that away. We agreed to take that away. Our interpretation on the right to use, HACO met. Again, it's a district court opinion. But what it says is the right, the enforceable right means the license to use, and that that's enough for Section, that's enough for Section 43. You know, with respect to the State law claims, I, we said that the State law, the Georgia law and, and, and Kansas law were as similarly broad, or Missouri law, excuse me, were similarly, similarly broad. We didn't say they were exactly the same. In fact, as our brief, we cited two Georgia State cases which were unmistakably clear that the, that non-exclusive licensees can sue under State, under Georgia unfair competition law without the presence of the, of the licensor. We didn't develop an independent or a backup argument that even if we lose on the, the claims related to the marks, we have some separate claims that don't depend on our use of the marks. Your Honor, we did not say that expressly. What I'll say is if you look at our summary, our opposition to their summary judgment brief, it's 25 pages long, 22 pages or 23 pages of that are on genericness. It wasn't until the parties got to the hearing on summary judgment when the judge said, I don't want to talk about that, I want to talk about standing on Lexmark, that the, so — But even there, you didn't really say, you know, you see it all the times in briefs. Even if we lose on this, then we at the very least have this separate claim here or there. No. I think, I don't, I think, I don't think that's right, Your Honor. I think at the hearing, again, most of the discussion at the hearing was, was different. But the, the judge himself, this is on page 4 of the transcript for the summary judgment hearing, pressed counsel for OGD on the State law claims. He said, the judge said, where have they released the State law claims? So the Court itself raised the State law claims as, as raising a separate question. The Court didn't address that, obviously. But the parallel claims, the parallel claims related to the marks, not a, not a separate claim that's not dependent on the marks. Your Honor, I agree that we did not say, you know, expressly. But, you know, given, given the context and given sort of the, the, the short-page limits and the, the genericness argument which took up all of that, I think it was — I think it was clear and it was enough, enough to preserve it. The last thing, one more point. Thank you, Your Honor. The counsel said, well, the licensee's rights cannot be broader than the licensor's. We're not arguing our rights are, quote, unquote, broader. We have different rights. Lexmark says we have the right to protect the commercial interests in our name, in our reputation, and in our sales. That's what we're protecting. Those are the same rights that the licensor might have that, that ODC pursued in the case in Texas. Congress said we have those rights. We can enforce those rights. And nothing in the case has — nothing where in the case of, or in the contract if we agreed to forego those rights. Can I ask you to address the Rule 19 issue, which is — I mean, I think if I understand the argument, it's sort of, well, okay, let's just assume for purposes of argument that you could bring this claim. You would have to have the franchisor in it to protect the franchisor's own interest and because that's where the rights come from. What do you say about that? Well, I don't think there are cases under Section 43 that say that at all. And if you — Rule 19 has a three-part analysis, right? First, the person must be required to be joined. Second, the person cannot be joined. And third, equity and good conscience require dismissal. And they haven't shown any of those three things. Yeah. I mean, I've always thought Rule 19 largely turned on whether you could join the person that is supposed to be joined. Is there any litigation over whether the franchisor could be joined? There's no indication in the record they could not be joined. They say, well, they can't be joined because they signed a settlement agreement releasing the claims. That doesn't mean they can't be joined. There may be a motion to dismiss that they would have. It would be weird for them to join ODC as a plaintiff and then move to dismiss their claims on the basis of the settlement agreement. That's the weirdness of this. ODC also has consented. They didn't approve beforehand, but during the litigation, they filed — we filed in the district court a statement by them saying that they agreed that we could proceed without them in the case. So it's an odd situation where they're saying ODC needs to be a party to protect them, and ODC is saying, no, we're fine the way it comes out. Yeah. Last question for me is, so opposing counsel is making a distinction between 43A1A and 43A1B. What do you say about that distinction? Does it make sense for us to draw a distinction in that regard? What do you say about that? I don't understand why the presence or absence of either an express authorization for the licensee to sue or a prohibition on the licensee suing, why it would matter whether it's A or B under the statute. I just — I can't — I can't conceive of why there's a difference. I don't think they argued that in their brief, so I can't — I can see I haven't really thought about that in detail, but I can't — standing up here, I can't see why it would make a difference. Thank you, Mr. Charns. Thank you all. And we have your case under advisement, and court is in recess until tomorrow morning. All rise.